IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| ROBERT R. PACQUETTE, | ) | |
| | ) | Case No. 4:06CV00060 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| NESTLÉ USA, INC., | ) | |
| | ) | By: Jackson L. Kiser |
| Defendant. | ) | Senior United States District Judge |

Before me now is Defendant Nestlé USA, Inc.'s ("Nestlé") Motion to Dismiss. The Plaintiff in this action is Robert R. Pacquette ("Pacquette"). The parties have briefed the issues and oral argument was held before this Court on April 12, 2007. The motions are therefore ripe for decision. For the reasons stated herein, Defendant's Motion to Dismiss is **DENIED** in part and **GRANTED** in part.

## I. FACTUAL BACKGROUND[1]

Defendant Nestlé employed Plaintiff Pacquette in a food refrigeration plant in Danville as an EPSU technician from 1989 until October 12, 2005. During this time, Nestlé awarded him two Spirit Awards for his contributions to the company. Pacquette took part in the ERISA benefit plan while employed there. Pacquette and his wife suffered health problems which required Nestlé to pay a large share of benefits. Pacquette's theory is that Nestlé sought to save these excessive medical and retirement benefit costs by terminating him under false accusations of dishonesty.

---

[1] I complied this summary from the facts in the Complaint and attached exhibits.

1

While Nestlé employed Pacquette at will, he was also subject to Nestlé's progressive employee discipline system with four stages for most offenses: 1) verbal warning, 2) written warning, 3) last chance letter, 4) termination. Pacquette routinely collected aluminum drink cans and other scrap from around the refrigeration plant which he recycled in order to use the profits to attend New York Yankees' games. Nestlé issued materials passes to Pacquette when removing the scrap which he recycled. On October 11, 2000, Pacquette received an oral warning for attempting to remove a discarded motor without a materials pass.

On Saturday, October 8, 2005 Pacquette obtained two discarded solenoids worth about 80 cents from the trash compactor at the plant and placed them in a box underneath some aluminum wire and empty soft drink cans in order to recycle them. Pacquette described these items to Team Leader Burl Whitlfield when he obtained his materials pass. In leaving the plant, a security guard checked Pacquette's materials pass which permitted Pacquette to obtain "Wire - Chubwire and a box."[2] Pacquette claims that he believed the word "wire" on the pass indicated the spools of copper wire which make up the majority of the solenoids. The security guard did not believe the pass included the solenoids and referred the matter to Brandi James, the Team Leader on duty at Nestlé's plant that day. She informed Pacquette that she believed he was attempting to hide the solenoids under the other material in order to take them from Nestlé without permission. Pacquette believed that he had been sabotaged by a Chicago White Sox or Atlanta Braves fan. Pacquette left at the end of his shift that day, worked his following shift, but was told not to report to work on Tuesday, October 11, 2005. Nestlé terminated his employment

---

[2]Chubwire is an aluminum wire used for tying off the ends of refrigerated cookie dough packages.

2

on October 12 for "dishonesty" in attempting to remove items from the company without a materials pass. Nestlé's written report of his termination was included as Exhibit A of the Complaint. Pacquette claims to have suffered shock at this accusation.

## II.     PROCEDURAL HISTORY

Plaintiff filed his Complaint on October 6, 2006 with eight causes of action:

1. Insulting Words - Va. Code Ann. § 8.01-45
2. Intentional Infliction of Emotional Distress ("IIED")
3. Negligent Infliction of Emotional Distress
4. Wrongful Discharge in Violation of Public Policy
5. Breach of Express or Implied Contract of Employment
6. Defamation
7. Breach of ERISA Fiduciary Duty
8. ERISA Discrimination

The Defendant Filed a Motion to Dismiss on February 8, 2006. The Plaintiff responded with a Brief in Opposition on March 5, 2007. The Defendant filed a reply to the response on March 23, 2007.

## III.    LEGAL STANDARD

*A.     Motion to Dismiss:*

Under the Federal Rules of Civil Procedure, a well-pleaded complaint must contain (1) "a short and plain statement" of jurisdiction; (2) "a short and plain statement" of the claim; and (3) a demand for judgment. Fed. R. Civ. Pro. 8(a). In considering a motion to dismiss, under Federal Rule of Civil Procedure 12(b)(6) a court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. Rei Systems, Incorporated*, 417 F.3d 418, 420 (4th Cir. 2005). "The complaint must be liberally construed in favor of the plaintiff, even if it appears that recovery is remote and unlikely." *Bryant v. Clevelands, Inc.*, 193 F.R.D. 486, 489 (E.D. Va. 2000). "While a plaintiff is not charged with

3

pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff is required to allege facts that support a claim for relief." *Bass v. E. I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Federal Election Commission v. Christian Action Network*, 894 F.Supp. 946, 950 (W.D. Va. 1995).

## IV. DISCUSSION

Defendant Nestlé moved to dismiss all of the causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, I will **GRANT** the motion to dismiss as to the causes of action for Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, Wrongful Discharge, Breach of Contract, Defamation, and Breach of ERISA Fiduciary Duty, and will **DENY** with regards to Insulting Words and ERISA Discrimination.

### A. *Cause of Action for Insulting Words*

Plaintiff Pacquette claims that the Defendant insulting him by calling him dishonest in his exit interview and seeks $500,000.00 under Virginia's insulting words statute. Va. Code Ann. § 8.01-45 ("All words shall be actionable which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace"). The Defendant moves to dismiss this claim for two reasons. First, Nestlé argues that the alleged statement is not insulting and does not tend to provoke violence or breach of peace. Second, Nestlé argues that any statement was protected by a qualified privilege. At this stage of the pleadings, I must assume all facts alleged in the Complaint are true, and I find that the Plaintiff has alleged sufficient facts to make out a *prima facie* case for insulting words.

4

Virginia's insulting words statute was originally meant to prevent dueling. *Potomac Valve & Fitting, Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1284 (4th Cir. 1987). The Virginia Supreme Court has since construed the statute to be identical to an action for defamation absent the element for publication. *Carwile v. Richmond Newspapers, Inc*., 196 Va. 1, 6, 82 S.E.2d 588, 591 (1954). There are two elements for an action of insulting words: "(1) the words are construed as insults from their usual construction and common acceptance and (2) the words tend toward violence and breach of the peace." *Cobbs v. Commonwealth*, 55 Va. Cir. 1, 4, (Va. Cir. Ct. 2001). In cases of defamation or insulting words, Virginia courts prefer to leave the question of whether a statement is actionable or not to the jury. *Guide Pub. Co. v. Futrell*, 175 Va. 77, 87, 7 S.E.2d 133, 138 (1940) ("[A]s a general rule the jury is regarded as the best and safest tribunal to determine whether the words are or are not actionable, the court has inherent power to set aside the verdict 'in order to correct any manifest departure from right and justice.'"); *Corr v. Lewis*, 94 Va. 24, 26, 26 S.E. 385, 386 (1896) ("The court cannot say whether the words are or are not insulting.").

The Defendant maintains that the allegations in this case would not meet the requirement of tending to provoke violence or breach of the peace. The Plaintiff alleged that the Defendant accused him of criminal dishonesty during his termination interview. The Plaintiff further alleged that the Nestlé's Disciplinary Action Form, which summarized the reasons for Pacquette's firing, included a second false accusation that he had attempted to remove materials without a pass on October 11, 2000. The Plaintiff alleges that these two statements amount to the "intolerable insult" of being called "a thief guilty of attempted larceny" and that "workplace murders occur regularly around the country for far less cause than that to which the plaintiff was

5

wrongfully subjected."

While I find the Plaintiff's language overly colorful, a reasonable jury might find that accusing someone of theft or dishonesty would provoke violence. The Defendant argues that negative statements concerning an employee's work conduct are generally not sufficient for an insulting words claim, citing *Lemond v. Viamac, Inc*., 57 Va. Cir. 25, 27 (Va. Cir. Ct. 2001). In that case, the manager of a restaurant wrote in a calendar book available to all employees that the plaintiff had been fired for giving away drinks and food. *Id*. at 25. The court sustained the defendant's demurrer to the insulting words cause of action "because there are no facts set forth in the motion for judgment or bill of particulars from which the court can conclude that the general manager's statements were 'fighting words.'" *Id.* at 26-27. The court gave no reason for this conclusion other than the broad statement that "Generally, negative statements concerning a person's conduct at her workplace are insufficient to support an insulting words claim" and allowed the plaintiff twenty-one days to amend her claim. *Id*. In determining if words are insulting or not, one must take into account the place, manner and circumstances of the speech. *Corr*, 94 Va. at 26, 26 S.E. at 386. Unlike the plaintiff in *Lemond*, Pacquette was accused of dishonesty and theft in a face-to-face confrontation which is more likely to provoke violence than finding a similar accusation left in a book.

Turning to the issue of the privilege, the Defendant correctly notes that employers communicating in good faith the reasons for firing an employee are protected by a qualified privilege for both defamation and insulting words claims. *Shabazz v. PYA Monarch*, 271 F. Supp. 2d 797, 806-7 (E.D. Va. 2003); *Alexandria Gazette Corp. v. West*, 198 Va. 154, 159, 93 S.E.2d 274, 279 (1956). The privilege may be defeated by clear and convincing evidence of

6

malice in the employer's communication. *Smalls v. Wright*, 241 Va. 52, 55, 399 S.E.2d 805, 808 (Va. 1991). Common law malice is defined as a statement that (a) the speaker knows was false or made with reckless disregard for the truth; (b) made where those having no interest or duty in the subject may hear the statement; (c) is "unnecessarily insulting" or if "the language used was stronger or more violent than was necessary under the circumstances;" or (d) is made out of "hatred, ill will, or a desire to hurt the plaintiff rather than as a fair comment on the subject." *Id.* at 807-08.

The Defendant argues that this privilege would protect Nestlé from liability even if the statements in questions were *prima facie* actionable. Furthermore, Nestlé argues that while the Plaintiff has alleged that Nestlé made the statements "with malice," a mere conclusory statement is insufficient and the facts of malice must be pled with specificity. *Jarrett v. Goldman*, 67 Va. Cir. 361, 375 (Va. Cir. Ct. 2005). The Defendant is correct, but the Plaintiff did plead specific enough facts to show malice. In Paragraph 49 of the complaint the Plaintiff alleged that

> In [the Disciplinary Action Form] and in this reading Nestlé wronglyfully [sic], purposely and intentionally called him a thief by, inter alia, misrepresenting that he was guilty of "Removing items from Company without a Material Pass" (on 10/11/2000), an outrageous lie or lies about his refused request for a pass to remove the burned out 50 lb electric motor described above. . .

While the language may be overly dramatic, the Plaintiff has clearly alleged that the Defendant intentionally made a false statement about Plaintiff. The Plaintiff further alleged that the true motive for these statements was not to make a fair comment on the subject, but to "stop the mounting 3, 4, 5, and 6 figure cash flows from the Company benefit plans for plaintiff and halt his vesting and participation therein." It may well be that at later stages in these proceedings these allegations will be unsupported. At this stage, however, they sufficiently describe malice

7

which overcomes the qualified privilege.

   *B.     Intentional Infliction of Emotional Distress Cause of Action*

The Plaintiff claims that Nestlé's conduct in firing him caused "nightmares, sleeplessness, worry and concern and all of the symptoms of post traumatic stress disorder" and seeks $500,000.00 in damages. Nestlé moves to dismiss this claim for two reasons. First, the conduct attributed to the Defendant by the Plaintiff does not rise to the level of being "so outrageous in character, and so extreme in degree, as to be beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Russo v. White*, 241 Va. 23, 27, 400 S.E.2d 160, 162 (citations omitted). Second, even assuming that the Defendant's actions were so outrageous, the Plaintiff has not plead symptoms attributable to this behavior which are so severe that no reasonable person could be expected to endure it. *Russo*, 400 S.E.2d at 163.

To bring an IIED claim, the plaintiff must prove that (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable; (3) the alleged conduct and emotional distress were causally connected; and (4) the distress was severe. *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 136, 523 S.E.2d 826, 833 (2000). Whether conduct is sufficiently extreme and outrageous is an issue of law for the court to decide. *Owens v. Ashland Oil, Inc.*, 708 F. Supp. 757, 760 (W.D. Va. 1989). Actions such as this one where the only injury is to the mind or emotions are not favored in the law. *Ruth v. Fletcher*, 237 Va. 366, 373, 377 S.E.2d 412, 415 (1989) (*citing Bowles v. May*, 159 Va. 419, 166 S.E. 550 (1932)).

While being fired on what the Plaintiff alleges are trumped up charges of dishonesty is both embarrassing and hurtful, it is not the sort of conduct which is "utterly intolerable in a

8

civilized community." *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 252 (W.D. Va. 2001); *see also Baradell v. Bd. of Soc. Servs. Pittsylvania County*, 970 F. Supp. 489, 494-95 (W.D. Va. 1997). In *Warner*, a federal district court dismissed an IIED claim where the plaintiff alleged that his employer had falsely accused him of theft in order to fire the plaintiff in order to avoid paying the plaintiff disability benefits. *Warner*, 149 F. Supp. 2d at 264-65. The Plaintiff before me makes essentially the same claim here, and I also find that he can prove no set of facts in support of this cause of action.

Additionally, the Defendant argued that Plaintiff has not plead symptoms which allow recovery by being so severe that no reasonable person could be expected to endure it. *Russo*, 241 Va. 23, 27-28, 400 S.E.2d at 163. The Plaintiff pled that he suffered "anger, pain, suffering, shock, dismay, nightmares, sleeplessness, dread, sorrow, grief, humiliation, six months of loss of appetite, six months of apparent post traumatic stress syndrome," as a result of the Defendant's conduct. In *Russo*, the plaintiff's nervousness, lack of sleep, inability to work or enjoy other activities due to stress was found insufficient because the plaintiff had no objective physical injury due to the stress that required medical attention. *Id.*; *see also Harris v. Americredit Fin. Servs.*, 2005 U.S. Dist. LEXIS 44339, *9-10 (W.D. VA. 2005); *Glover v. Oppleman*, 178 F. Supp. 2d 622, 643 (W.D. Va. 2001). The Plaintiff's alleged symptoms here are no different than the ones in *Russo* which were insufficient to recover on an IIED claim. Therefore, the facts as alleged do not support the Plaintiff's claim for relief.

  C. *Negligent Infliction of Emotional Distress Cause of Action*

The Defendant also argues that the Plaintiff has failed to allege sufficient damages to sustain a claim for negligent infliction of emotional distress because he did not allege either a

9

physical impact nor physical manifestations of emotional distress. I agree with the Defendant's reasoning.

Under Virginia law, negligent conduct without a physical impact can only lead to recovery if the Plaintiff pleads and proves "that his physical injury was the natural result of fright or shock proximately caused by the defendant's negligence." *Delk*, 259 Va. 125, 137-38, 523 S.E.2d at 833-34. While Pacquette made conclusory allegations that he suffered fright and shock, these injuries fall short of the physical injuries required for an NIED claim. *Goff v. Jones*, 47 F. Supp. 2d 692, 696 (E.D. Va. 1999); *Delk*, 259 Va. 125, 137-38, 523 S.E.2d at 833-34; *Villnow v. DeAngelis*, 55 Va. Cir. 324, 328 (Va. Cir. 2001). To the extent that the Plaintiff alleged physical symptoms such as sleeplessness and loss of appetite, these are symptoms of an emotional disturbance, not a physical injury. *Myseros v. Sissler*, 239 Va. 8, 11-12, 387 S.E.2d 463, 465 (1990) (post traumatic stress disorder, anxiety disorder, nausea, difficulty sleeping and breathing, loss of appetite and weight are manifestations of underlying emotional disturbance, not physical injury). Therefore, the facts as alleged do not support the Plaintiff's claim for relief.

D. *Wrongful Discharge in Violation of Public Policy*

The Defendant argues that the Plaintiff has not pled sufficient facts to meet Viriginia's narrow requirements for a cause of action for wrongful firing. I agree.

Generally, Virginia follows the at-will doctrine which allows employers to terminate employees for almost any reason. *Doss v. Jamco*, 254 Va. 362, 366, 492 S.E.2d 441, 443 (1997), (*citing Stonega Coke & Coal Co. v. Louisville and Nashville R.R.*, 106 Va. 223, 55 S.E. 551, 552 (1906)). In *Bowman v. State Bank of Keysville* the Virginia Supreme Court created an exception to the at-will doctrine in cases where an employee is discharged in violation of public policy.

10

229 Va. 534, 540, 331 S.E.2d 797, 801 (1985).  In order to invoke the *Bowman* exception, the plaintiff must establish the violation of either a statute or other clear expression of public policy. *Miller v. SEVAMP, Inc*., 234 Va. 462, 468, 362 S.E.2d 915, 918 (1987).  A statutory public policy exception can only be predicated on Virginia statutes, not federal ones.  *See Oakley v. The May Dep't Stores, Co.*, 17 F. Supp. 2d 533, 536 (E.D. Va. 1998).  A plaintiff may predicate his wrongful discharge claim on a statute which explicitly states the public policy within the language of the statute itself.  *Lockhart v. Commonwealth Educ. Sys. Corp*., 247 Va. 98, 103-04, 439 S.E.2d 328, 331 (1994).  Alternatively, the plaintiff may base the claim on state public policy implicit in statutes designed to protect the "property rights, personal freedoms, health, safety, or welfare of the people in general." *Miller*, 234 Va. at 468, 362 S.E.2d at 918.  To qualify under this latter category, the statute identified "must be in furtherance of 'an [underlying] established public policy' that the discharge from employment violates."  *City of Virginia Beach v. Harris*, 259 Va. 220, 233, 523 S.E.2d 239, 245 (2000)(*quoting Bowman*, 229 Va. at 468, 331 S.E.2d at 801).  In addition, the plaintiff must prove that he or she is also a member of the class that the specific public policy in the statute is intended to benefit.  *Dray v. New Market Poultry Products, Inc*., 258 Va. 187, 191, 518 S.E.2d 312, 313 (1999).

In the Complaint, the Plaintiff cited only two laws as the source of the public policy that the Defendant allegedly violated by firing him.  The first was Virginia's insulting words statute. Va. Code Ann. § 8.01-45.  The Defendant contends that Virginia's insulting words statute does not contain an explicit statement of public policy and was not designed to protect the welfare of the people in general because it only addresses conduct between individuals. I find this to be persuasive.  As the Virginia Supreme Court has stated, the *Bowman* exception is "not so broad as

11

to make actionable those discharges of at-will employees which violate only private rights or interests." *Miller*, 234 Va. 462, 468, 362 S.E.2d 915, 918. Likewise, the Plaintiff cannot rely upon § 510 of ERISA because this is a federal law, and *Bowman* claims can only be predicated on Virginia laws. *Oakley*, 17 F. Supp. 2d at 536.

In his response brief, the Plaintiff cited a string of additional laws as sources for public policy which was breached by Nestlé's actions. Va. Code Ann. §§ 18.2-416 (abusive language); 18.2-417 (slander and libel); 18.2-172 (forgery); 18.2-178 (larceny by false pretenses); 8.01-46.1 (disclosure of employment information); 34-34 (exemptions for retirement benefits); 8.01–391B (governing use of copies as evidence in trials); and 11-2 (statute of frauds). This string of statutes was unaccompanied by case law or argument showing that Virginia recognizes a public policy which was violated by Nestlé's actions. While these laws, like all laws, reflect the public policy of Virginia to some extent, the Plaintiff has not alleged any facts to show a new cause of action should be based upon these statutes. Furthermore, the Plaintiff has not shown that he has a "statutorily-created right" which his employer violated by discharging him nor has he shown that he was terminated for refusing to violate a statutory duty. *Warner*, 149 F. Supp. 2d at 264. In conclusion, I find that the Plaintiff's discharge could not be in violation of public policy under the facts as alleged.

E.  *Breach of Express or Implied Contract*

The Plaintiff seeks damages for the Defendants breach of the "oral contract" between the parties for employment or, in the alternative, for me to recognize that the termination violated the employment handbook's progressive discipline system and constitutes a breach of contract. The Defendant makes two arguments as to why the Plaintiff's contractual claims should be

dismissed. First, the Defendant argues that no contact existed between the parties because Pacquette was an at-will employee of Nestlé. In the alternative, the Defendant argued that even if the Employee Handbook could be construed as a contract, it would violate the Statute of Frauds. Because I am convinced by the first argument, I find no reason to examine the second issue here.

Virginia retains the common law rule that a contract for services which does not specify a time period for rendition of those services can be terminated by either party provided that reasonable notice is given. *Bowman*, 229 Va. 534, 535, 331 S.E.2d at 798; *Miller*, 234 Va. 462, 465, 362 S.E.2d at 916-17. Furthermore, an employment contract which fixes no time for the duration of employment creates a rebuttable presumption that the employment is terminable at-will. *Miller*, 234 Va. 462, 465, 362 S.E.2d at 917.

The Defendant points out that no employment contract for any specific duration existed between the Plaintiff and Defendant, and therefore, the Defendant was free to fire Pacquette for any reason. Although the Plaintiff argued that the Employee Handbook constitutes a contract, the Plaintiff signed an Employee Handbook Acknowledgment form which clearly states that Pacquette was an at-will employee subject to termination without cause. Even the Plaintiff's Exhibit C, an excerpt from the employee handbook, includes the language that "a Team Member may be discharged for . . . any other reason at the company's discretion." In similar cases, statements of the at-will status of the employee in an employment handbook defeated any the use of these handbooks as employment contracts. *See Sullivan v. Snap-On Tools*, 708 F. Supp. 750, 753 (E.D. Va. 1989); *Nicol v. Imagematrix, Inc.*, 767 F. Supp. 744, 755 (E.D. Va. 1991);*Miller*, 362 S.E.2d at 918; *Progress Printing Co. v. Nichols*, 244 Va. 337, 341 421 S.E.2d 428, 430 (Va.

13

1992); *Graham v. Cent. Fid. Bank*, 245 Va. 395, 400, 428 S.E.2d 916, 918 (Va. 1993). As the Plaintiff has already acknowledged that he was an at-will employee, there can be no breach of contract in his termination and I dismiss the contractual causes of action.

    F.    *Defamation*

The Defendant offered several reasons why the Defamation cause of action should be dismissed: 1) being accused of dishonesty does not rise to the level of defamation; 2) Nestlé had a qualified privilege in making the statement; 3) there was no publication; 4) the Plaintiff failed to allege malice. After reviewing the facts in the light most favorable to the Plaintiff, I find that there could have been no publication of the defamatory statements because the only audience for the statements were persons employed by Nestlé with an interest in the subject matter, and therefore this cause of action is dismissed.

Defamation requires the Plaintiff to allege (1) publication (2) of a false (3) defamatory statement (4) concerning Plaintiff. *Jarrett*, 67 Va. Cir. at 369, *(citing Gazette, Inc. v. Harris*, 229 Va. 1, 37 325 S.E.2d 317, 738 (1985)). Virginia retains the common law distinction between words which are defamatory *per se* and those which require proof of special damages. *Great Coastal Express v. Ellington*, 230 Va. 142, 146-47, 334 S.E.2d 846, 849 (1985). Statements are defamation per se if they are false and impute to the plaintiff 1) the commission of an act which is a criminal offense involving moral turpitude; 2) infection by a contagious disease which which would typically exclude someone from society; 3) unfitness to perform the duties of an office or employment, or lack of integrity in carrying out such duties; 4) characteristics or habits that would prejudice he plaintiff in his profession. *Id.* Virginia case law holds that "there is no publication when a defamatory communication occurs between persons within the same

14

corporation who have a duty and interest in the subject matter." *Wines v. Fuller*, 45 Va. Cir. 299, *2 (Warren County 1998); *Chalkley v. Atlantic Coastline Ry.*, 150 Va. 301, 335, 143 S.E. 631, 640-41 (Va. 1928).

The Plaintiff alleged that the defamatory statements in this case were published by the means of Nestlé's Disciplinary Action Form which was "boldly read aloud" during the Plaintiff's exit interview. For this to constitute a publication for defamation purposes, those who read or heard the statement would have had to be either outside the corporation or have had no interest in the subject matter. Although the Plaintiff alleged that the "persons who were present [at the exit interview] should not have been," his own exhibits reveal that everyone present was within the same corporation and had a duty and interest in the subject matter. Keeping in mind that "courts should be especially leery of allowing complaints to survive motions to dismiss in situations in which the plaintiff alleges one thing in conclusory terms, but the complaint also alleges certain things that seem to give rise to the opposite inference," I find the Plaintiff's allegations to lack evidence of publication. *Inman v. Klockner-Pentaplast of Am., Inc*., 467 F. Supp. 2d 642, 649 (W.D. Va. 2006).

As far as I can discern, the only persons who have heard the defamatory statements in this case were Nestlé employees who had a clear interest in the subject matter. According to Paragraph 46 of the Complaint, only two people were present at the exit interview other than the Plaintiff where the Disciplinary Action Form was read aloud. The Plaintiff expressly identified the Human Resources Representative as one of those present, and the representative signed the form. The only other signatory is the Team Leader, who I presume was the other employee in the exit interview. The Disciplinary Action Form itself indicates that the Operations Manager

15

and Pacquette himself received copies. The Plaintiff also alleged that the Human Resources Representative informed him that the Plant Manager had approved the termination. Taking the allegations in the light most favorable to the Plaintiff, there is no individual identified in the Complaint or attached exhibits who was exposed to the defamatory matter and was either outside the corporation or had no interest in the subject matter. It seems clear that the Human Resources Representative, Team Leader, Operations Manager and Plant Manager would all have an interest in knowing that an employee was fired and the stated rationale for that decision.

Finally, the Plaintiff argued that he faced "compelled self-publication," that is, that he will have to repeat the Defendant's defamatory statements in explaining to prospective employers why he is no longer working for the Defendant. The publication element of defamation cannot be met by compelled self-publication in Virginia. *Cybermotion, Inc. v. Vedcorp, L.C.*, 41 Va. Cir. 348, 348-349 (Va. Cir. 1997); *see also Atkins v. Industrial Telecommunications Ass'n*, 660 A.2d 885, 894-95 (D.C. 1995) (rejecting a defamation claim based on compelled self-publication because the Virginia Supreme Court has not dealt with this issue and would probably not adopt it). As I find that there could have been no publication of the alleged defamatory statements, I find no reason to analyze the Defendant's other arguments on this issue.

        G.     *Breach of Fiduciary Duty under ERISA*

The Defendant argues that the Plaintiff's breach of fiduciary duty under ERISA claim should be dismissed for three reasons: 1) the Plaintiff has failed to plead that Nestlé is a fiduciary, 2) the Plaintiff cannot base a breach of fiduciary duty claim on the Defendant's termination of the Plaintiff's employment, and 3) ERISA doesn't permit individual claims.

16

In order to establish a breach of fiduciary duty claim, the Plaintiff must show that (1) the Defendant was a fiduciary under ERISA, (2) the Defendant breached its fiduciary duties, and (3) Plaintiff is entitled to relief. *Graham v. Pactiv Corp. Benefits Comm.*, 301 F. Supp. 2d 483 (E.D. Va. 2004). Under ERISA, a fiduciary is a person or entity that "exercises any discretionary authority or discretionary control respecting management of [an ERISA] plan or exercises, any authority or control respecting management or disposition of its assets, . . . or . . . has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). The issue of whether the Defendant exercised discretionary authority or control concerning the management or administration of the ERISA plan or its assets can be met by alleging facts which demonstrate that type of authority or control. *Custer v. Sweeney*, 89 F.3d 1156, 1162 (4th Cir. 1996). Alternatively, the Plaintiff can also show that the Defendant was "expressly identified in the plan documents, either by name or according to a procedure specified in the plan, as having the authority to control and manage the operation and administration of the plan." *In re Mut. Funds Inv. Litig.*, 403 F. Supp. 2d 434, 445 (D. Md. 2005).

The Defendant contends that the Complaint fails to allege such authority or control. The Plaintiff only alleged that Nestlé was "an ERISA plan sponsor . . . and fiduciary." Nowhere in the Complaint does the Plaintiff allege facts showing the Defendant's authority or control over the ERISA plan, nor does the Plaintiff allege that the plan documents identify the Defendant as having this authority or control, nor did the Plaintiff attach the plan documents to the complaint. Such conclusory allegations are insufficient to support this claim.

Even if the Plaintiff had more specific factual allegations, he has failed to show that the Defendant's conduct was a fiduciary breach. A breach of fiduciary duty claim requires that the

17

alleged breach be related to fiduciary duties, such as managing plan funds. *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 372-73 (4th Cir. 2003). Even assuming that Nestlé fired Plaintiff on trumped up charges, this does not relate to the Defendant's fiduciary responsibilities. The Defendant employer fired the Plaintiff as an employer, and the conduct is at best tenuously connected with administering the plan or investing the plan assets. *Smith v. Snydor*, 2000 U.S. Dist. LEXIS 20074, *28-29 (E.D. Va. Aug. 25, 2000) *(citing Dzinglski v. Weirton Steel Corp.*, 875 F.2d 1075, 1079 (4th Cir. 1989))*.

Finally, the Plaintiff must show a loss to the plan, not himself, in order to sustain a ERISA breach of fiduciary duty claim. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985). The Plaintiff has not alleged any losses to the plan, and therefore cannot sustain this claim. *Smith*, 2000 U.S. Dist. LEXIS 20074, *60.

### H. Discrimination in Violation of ERISA

The Plaintiff alleged that Nestlé's true motive in terminating his employment was not for the stated reason of dishonesty but to interfere in his receipt of ERISA benefits and he seeks back and front pay as well as attorney fees for this discrimination. The Defendant argues that the Plaintiff's allegations are insufficient to show ERISA discrimination. I find that at this stage of the pleadings, the Plaintiff has plead enough facts to support a claim for relief.

Section 510 of ERISA makes it illegal for an employer to "discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purposes of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ." 29 U.S.C.A. § 1140. In order to state a claim for violating 29 U.S.C. § 1140 the plaintiff must allege that the defendant

18

employer had the specific intent to interfere with the employee's attainment of his or her rights. *Flickinger v. E.I. du Pont de Nemours & Co.*, 466 F. Supp. 2d 701, 708 (E.D. Va. 2006).

The Defendant argues that the Plaintiff's allegations are too conclusory on the issue of specific intent, but I find that after viewing the facts in the Complaint in the light most favorable to the Plaintiff, Pacquette has inferred all the elements of a Section 510 claim. The Plaintiff's alleges that the "<u>clear corporate motive for the wrongful firing was economic</u>, not even to eliminate the higher pay resulting from experience and overtime, but <u>to stop the mounting 3, 4, 5, and 6 figure cash flows from the Company benefit plans for plaintiff and halt his vesting and participation therein.</u>" (emphasis in original). Furthermore, he alleged that the Defendant trumped up the accusations of theft in both 2000 and 2005 as a false pretext in order to terminate his employment because "the costs to Nestle of plaintiff's employment had far exceeded and would far exceed the $15.64 per hour he was paid or the overtime reported for this employee, because of the health problems suffered by plaintiff and his wife which were already costing Nestle several hundred thousand dollars."

The allegations here are similar to the ones in *Warner*, 149 F. Supp. 2d at 253-58. In that case, the plaintiff employee's Section 510 claim was allowed to proceed based on similar factual allegations. *Id*. In *Warner*, the plaintiff alleged that the defendant employer "clearly did not want Mr. Warner to exercise his rights to receive benefits for his disability." *Id*. at 254. Furthermore, the plaintiff alleged that his employer made false statements of theft to disguise the true motive of firing the employee in order to interfere with the employee's ERISA benefits. *Id*. The court concluded that while the complaint did not cite the statutory language of "specific intent," the allegations were "sufficient to 'give the defendant[s] fair notice of what [his] claim is

19

and the grounds upon which it rests.' *Id.* (*citing Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The Defendant before me has the same notice as the defendant in *Warner*, and I see no reason to dismiss this claim.

## V. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is **DENIED** in part and **GRANTED** in part.

The Clerk is directed to send a certified copy of this Memorandum Opinion and the attached Order to all counsel of record.

ENTERED this 7th day of May, 2007.

s/Jackson L. Kiser<br>
Senior United States District Judge

20